IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**ESTELLA ESCOBAR-GONZALEZ**,

    Plaintiff,

    v.

**CAROLYN W. COLVIN**,
Acting Commissioner of the Social Security
Administration,

    Defendant.
_____

**Civ. No. 3:13-cv-01587-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

    Plaintiff Estella Escobar-Gonzalez brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). The issues before this Court are: (1) whether the Administrative Law Judge (ALJ) erred in evaluating a September 1, 2005 treatment note; and (2) whether the ALJ erred under step four and five of the sequential evaluation. Because the ALJ erred by failing to expend reasonable efforts to identify the name and credentials of the author of the September 1, 2005 treatment note, and such an error is not necessarily harmless, the Commissioner's decision is REVERSED and this matter is REMANDED for further proceedings.

1 – OPINION AND ORDER

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for DIB and supplemental security income payments (SSI) on March 29, 2010, alleging disability since August 1, 2003. Tr. 28, 243–44. Plaintiff's claim for DIB was denied initially and upon reconsideration. Tr. 96–97, 125. Plaintiff's claim for SSI was denied initially, but granted upon reconsideration on October 13, 2010, with an established onset date of July 1, 2010. Tr. 109–10, 140–41. Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ), and appeared before the Honorable Paul G. Robeck on September 2, 2011. Tr. 28, 43–86, 167–68. ALJ Robeck denied plaintiff's claim for DIB by written decision dated October 6, 2011. Tr. 22, 28–38. Plaintiff sought review from the Appeals Council, which was subsequently denied, tr. 1–3, thus rendering the ALJ's decision final. Plaintiff now seeks judicial review.

Plaintiff, born on December 3, 1960, tr. 36, 48, completed the first grade in Mexico prior to immigrating, tr. 49, 252, 280, 351. Plaintiff also took several English classes at Portland Community College. Tr. 49. Plaintiff was forty-two at the time of alleged disability onset, and forty-five at her date last insured, December 31, 2005. *See* tr. 30, 48.[1] Plaintiff alleges disability due to: degenerative disk disease of the cervical and lumbar spine, obesity and asthma. Tr. 30.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence on the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). To determine whether substantial evidence exists, this Court reviews the administrative

---

[1] Plaintiff was a "younger person" at the time of alleged disability onset and date last insured. *See* 20 C.F.R. § 404.1563(c).

2 – OPINION AND ORDER

record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

## DISCUSSION

The Social Security Administration utilizes a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If a claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's Residual Functional Capacity (RFC), age, education, and work experience. *Id*.

Plaintiff contends that: (1) the ALJ erred in evaluating a treatment note dated September 1, 2005; (2) the ALJ erred under step four because plaintiff did not work previously as a solderer; and (3) the ALJ erred under step five because plaintiff is disabled under the Medical-Vocational Guidelines (Grids), 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.00(h)(1).

### I. Treatment Note

Plaintiff contends that the ALJ erred in his consideration of a treatment note dated September 1, 2005, which was allegedly authored by Nicole Trajano, M.D. *See* Pl.'s Br. 5–8, ECF No. 12. In response, defendant argues that regardless of whether the treatment note was authored by Dr. Trajano, the limitations in the note were not supported in the medical record. Def.'s Br. 6, ECF No. 13 (quoting tr. 34). This Court looks to the treatment note.

That note, which is largely illegible, provides in part:

> #2. Would like me to write a letter for disability . . . . Unable to do heavy lifting. Has pain if stands [greater than] 15 minutes or sits still [greater than] 15 min[utes]. No change in . . . back pain. Does not speak English.

3 – OPINION AND ORDER

> . . .
>
> [#4.] . . . . Has been evaluated several times by orthopedics who don't think surgery would benefit her. She should avoid lifting [greater than] 10-15 [pounds], prolonged standing or sitting [greater than] 15 min[utes]. Perhaps could do light desk jobs.

Tr. 541.[2] The ALJ, having considered this treatment note, found:

> On September 1, 2005, the claimant's treating provider (whose name and credentials are illegible) opined the claimant could lift no more [than] 10 to 15 pounds, could [not] stand or sit for more than 15 minutes. She could perhaps do light desk jobs. This opinion is given little weight. There is no way to determine the treating provider's credentials (i.e. whether he or she is an acceptable medical source), nor is there a sufficient justification in the medical record indicated for such limitations.

Tr. 34. As an initial matter, this Court finds that *reasonable efforts*[3] should have been expended to identify the name and credentials of the author of the treatment note. *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) ("In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." (citation omitted)); *cf*. SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996) ("For treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us."). The illegible signature from the September 1, 2005 treatment note also appears on treatment notes from January 1, 2006, tr. 540, August 10, 2005, tr. 542, July 29, 2005, tr. 543, April 22, 2005, tr. 545, March 29, 2005, tr. 546, December 23, 2004, tr. 548,

---

[2] The parties generally agree with this interpretation of the treatment note. *Compare* Pl.'s Br. 6, ECF No. 12, *with* Def.'s Br. 5, ECF No. 13.

[3] This Court declines to define the parameters of "reasonable efforts." However, such efforts would include at least an attempt to contact Dr. Trajano to seek clarification. A brief internet search reveals that a Nicole Trajano, M.D. is practicing with Providence Health & Services in Hillsboro, Oregon. *See* PROVIDENCE HEALTH & SERVICES, FIND A DOCTOR: NICOLE TRAJANO, M.D., http://oregon.providence.org/physician-directory/t/trajano-nicole/ (last visited Nov. 6, 2014).

4 – OPINION AND ORDER

November 8, 2004, tr. 549, and May 25, 2004, tr. 553. Moreover, "Trajano" or "Tra" is listed on each of the mentioned treatment notes as the primary care provider. These factors, even absent identification of the physician, put the ALJ on notice that one of claimant's treating providers, possibly a medical doctor, believed that claimant had limitations more restrictive than the RFC[4] proposed by the ALJ. Therefore, the ALJ erred by failing to make *any* effort to identify the source. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." (citation and internal quotation marks omitted)).

Defendant contends that any error allegedly committed was harmless because the ALJ's proffered rationale for rejection—inconsistency with the medical record—is supported by substantial evidence. Def.'s Br. 6–9, ECF No. 13. Defendant's argument, however, is not persuasive under the circumstances.

A harmless error is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). The ALJ's error, under these circumstances, is not necessarily harmless. If, for example, the ALJ had discovered that Dr. Trajano was the author of the treatment note, then the ALJ had an obligation to seek additional clarification. *See* SSR 96-5p, 1996 WL 374183, at *2. Clarification was particularly important in

---

[4] As to plaintiff's RFC, the ALJ found:

> [T]he claimant had the residual functional capacity to perform light work . . . except the claimant could lift and/or carry no more than 20 pounds occasionally and 10 pounds frequently. The claimant could stand and walk up to two hours. The claimant is limited to no more than occasional climbing, balance, stooping, kneeling, crouching and crawling. The claimant is further limited to no more than occasional overhead reaching bilaterally and no more than occasional lifting with the upper extremity in all directions.

Tr. 31–32.

5 – OPINION AND ORDER

these circumstances because of the poor penmanship present in the September 2005 and other related treatment notes identified by this Court. The ALJ's proffered reason—inconsistency with the medical record—cannot be said to represent, at minimum,[5] "specific and legitimate reasons" for rejecting this potential acceptable medical source opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." (citation omitted)). Dr. Trajano, if she is the author, has not yet been given an opportunity to clarify the basis of her opinion. Assuming that Dr. Trajano's opinion is based, at least in part, on objective medical evidence, *see* 20 C.F.R. §§ 404.1508, 1528, the ALJ will need to provide a more thorough analysis, which must include *specific and legitimate reasons* supported by substantial evidence. This potential need for additional analysis is particularly striking in light of the procedural posture of the case, tr. 140 (recognizing disability onset date of July 1, 2010), supportive lay witness evidence, tr. 308–315, 647–48, and the special significance accorded to medical source statements submitted by treating sources, SSR 96-5p, 1996 WL 374183, at *4.

On the other hand, if the ALJ is unable to identify the author of the treatment note after making reasonable efforts, then the ALJ's duty to develop the record will have been discharged. *Tonapetyan*, 242 F.3d at 1150 ("The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." (citations omitted)). Likewise, if the ALJ is able to identify the author, but the author

---

[5] If Dr. Trajano is the author and her opinion is not contradicted by another doctor, then the ALJ can reject her opinion only by providing "clear and convincing reasons." *Reginnitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999) (citation omitted).

6 – OPINION AND ORDER

is not an "acceptable medical source," *see* 20 C.F.R. § 404.1513(d)(1) (defining "acceptable medical sources"), then the ALJ need only provide reasons *germane* to that individual for rejecting his or her September 2005 treatment note showing the severity of plaintiff's symptoms, *see Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (discussing rejection of lay testimony). The ALJ's reference to inconsistency with the medical record, when considered in light of his discussion of plaintiff's treatment history, work history, and daily activities, constitutes such a germane reason.

## II. Step Four

"At step four, claimants have the burden of showing that they can no longer perform their past relevant work." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001) (citations omitted); *see* 20 C.F.R. § 404.1520(a)(4)(iv). However, an ALJ "still has a duty to make the requisite factual findings to support his conclusion." *Id*. (citations omitted).

The ALJ concluded that plaintiff was "capable of performing past relevant work as a solderer (706.685-010, sedentary, SVP3)" as "actually and generally performed." Tr. 36. Plaintiff contends that this finding is erroneous because she never actually worked as a solderer as defined in the Dictionary of Occupational Titles (DOT), § 706.685-010.[6] Pl.'s Br. 8–9, ECF

---

[6] DOT § 706.685-010 describes the duties of a "Type-Soldering-Machine Tender (office machines)" as follows:

> Tends machine equipped with multiple stations that solders typewriter type to type bars: Clamps type bar and segment-assembly to holding plate of machine. Selects type in designated sequence and positions type between guides, or in matrix plate on machine table. Pulls down first type bar with fingers and seats end of bar in back slot of type. Pushes table or depresses treadle that moves assembly to next station where flux, solder, and coolant air are automatically applied. May apply flux to back slot, using tweezers. May adjust guides for different styles of type, using size blocks and turning setscrews. May remove excess solder to prevent type from binding in type guide, using pencil-flame gas torch and brush or file.

DICTIONARY OF OCCUPATIONAL TITLES, TITLE(S): TYPE-SOLDERING-MACHINE TENDER (office machines), http://www.occupationalinfo.org/70/706685010.html (last visited Nov. 7, 2014).

7 – OPINION AND ORDER

No. 12. In response, defendant contends that plaintiff is merely "elevat[ing] form over substance." Def.'s Br. 9, ECF No. 13. This Court looks to the record.

Plaintiff worked as an "assembler" for Ornelas Enterprises (Ornelas) from 1994 until 1997. Tr. 291. Plaintiff initially indicated in her work history report that her job duties included "[a]ssemb[ling] cables and solder[ing] circuit boards." Tr. 292. However, during the administrative hearing, plaintiff indicated that she did not actually solder. Tr. 76, 79. Instead, plaintiff noted that her job duties varied, but included assembling cables and washing circuit panels in a machine. Tr. 77–78.

The Vocational Expert (VE), in response to a series of questions posed by the ALJ, opined that plaintiff's position at Ornelas included at least two DOT classifications. First, as to plaintiff's assembling experience, *see* tr. 77, the VE indicated that these tasks could be classified as "Electronics assembler . . . DOT . . . 726.684-018 . . . light, SVP 4," tr. 81. Second, as to plaintiff's circuit panel washing experience, the VE stated "I would consider that to be light unskilled SVP 2 work. I think that's a fair assessment of it." Tr. 81–82.

The ALJ, without discussion, concluded that plaintiff was capable of performing her previous position at Ornelas, which he classified as *soldering*. The record does not support such a classification. The ALJ may not broadly discount plaintiff's hearing description of her job duties in favor of a single line on a work history report absent *any* discussion, particularly when plaintiff has an identified English language barrier. *See Pinto*, 249 F.3d at 844. Accordingly, the ALJ erred and plaintiff is not able to perform her previous position at Ornelas.

### III. Step Five

At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's RFC, age, education, and

8 – OPINION AND ORDER

work experience. 20 C.F.R. § 404.1520(a)(4)(v). The ALJ concluded, in an alternative finding, that plaintiff was capable of performing the "requirements of representative occupations such as assembly jobs ([DOT §§] 713.687-026 and 926.684-050, sedentary . . . .)." Tr. 37.

Plaintiff, in reliance on Grid Rule § 201.00(h)(1), asserts that she is disabled. Grid Rule § 201.00(h)(1) provides:

> The term younger individual is used to denote an individual age 18 through 49. For individuals who are age 45–49, age is a less advantageous factor for making an adjustment to other work than for those who are age 18–44. Accordingly, a finding of "disabled" is warranted for individuals age 45–49 who:
>
> (i) Are restricted to sedentary work,
>
> (ii) Are unskilled or have no transferable skills,
>
> (iii) Have no past relevant work or can no longer perform past relevant work, and
>
> (iv) Are unable to communicate in English, or are able to speak and understand English but are unable to read or write in English.

Plaintiff, who was forty-five at her date last insured, tr. 30, 48, is disabled pursuant to Grid Rule § 201.00(h)(1) *if* she meets all four requirements.

First, plaintiff contends that her limitations as articulated by the ALJ should be classified as "sedentary work," not "light work." *Compare* 20 C.F.R. § 404.1567(a) (defining sedentary work), *with* 20 C.F.R. § 404.1567(b) (defining light work).[7] The ALJ limited plaintiff, in

---

[7] 20 C.F.R. § 404.1567 provides, in relevant part:

> (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
>
> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight

9 – OPINION AND ORDER

relevant part, to: (1) lifting/carrying no more than 20 pounds occasionally and 10 pounds frequently; (2) standing and walking up to two hours; and (3) lifting with the upper extremity in all directions no more than occasionally. Tr. 31–32. These limitations, although more restrictive than unmodified "light work," do not constitute "sedentary work." *See* SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983) ("A job is also in this category when it involves *sitting most of the time* but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator . . . ." (emphasis added)).

Second, plaintiff contends that she is unskilled and lacks transferable skills. *Compare* 20 C.F.R. § 416.968(a) (defining unskilled work), *with* 20 C.F.R. § 416.968(b) (defining semi-skilled work, *and* 20 C.F.R. § 416.968(c) (defining skilled work).[8] This contention appears to be

---

> lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

[8] 20 C.F.R. § 416.968 provides, in relevant part:

> (a) Unskilled work. Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs.
>
> (b) Semi-skilled work. Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks.

10 – OPINION AND ORDER

in conflict with the VE's hearing testimony. During that hearing, the VE opined that plaintiff's past relevant work included a semi-skilled position (cable assembler) and a skilled position (cook). Tr. 70. Nonetheless, because the ALJ did not make any relevant factual findings on this issue, this Court declines to do so now.

Third, plaintiff contends that she is unable to perform her past relevant work. This Court agrees. As discussed *supra* § II, plaintiff is unable to perform her past position at Ornelas Enterprises.

Fourth, plaintiff contends that she is either illiterate or unable to communicate in English. Pl.'s Br. 14–17, ECF No. 12. The ALJ, in a footnote, addressed plaintiff's language barrier as follows:

> Before the hearing, a Spanish interpreter was requested, and at the hearing the interpreter translated the proceedings for the claimant's benefit. Towards the end of the hearing, the claimant's representative suggested that the Grid rules might apply since the claimant was unable to communicate in English. However, on questioning, the claimant admitted to understanding everything that was said in English during the hearing.

Tr. 36 n. 3. This finding is supported by substantial evidence. *See* tr. 48–49, 85.

Accordingly, plaintiff is not disabled pursuant to Grid Rule § 201.00(h)(1).

## **CONCLUSION**

---

(c) Skilled work. Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity.

For these reasons, the Commissioner's final decision is REVERSED and this matter is REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings. It is hereby ordered, upon remand:

**1.** The ALJ shall make reasonable efforts to identify the name and credentials of the author of the September 1, 2005 treatment note, tr. 541.

**2.** If the author is not an "acceptable medical source" under 20 C.F.R. § 404.1513(a), the ALJ shall not take any additional action.

**3.** If the author is an "acceptable medical source" under 20 C.F.R. § 404.1513(a), the ALJ shall **(a)** seek clarification from the author if the bases for the treatment note are not clear, SSR 96-5p, 1996 WL 374183, at *2, and **(b)** only reject the author's September 1, 2005 treatment note by providing specific and legitimate reasons that are supported by substantial evidence, *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997).

**4.** If necessary, the ALJ may reassess plaintiff's RFC to reflect limitations identified in the treatment note.

**5**. If, upon reassessment, plaintiff's RFC is more restrictive, the ALJ shall make new findings under step five of the sequential evaluation, and obtain supplemental VE evidence.

IT IS SO ORDERED.

DATED this 12th day of November, 2014.

_____
**Michael J. McShane**
**United States District Judge**